IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
~Northern Division~

| | |
|---|---|
| LEON JEROME THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No. 10-CV-00825 (BEL) |
| | ) |
| EARLY WARNING SERVICES, LLC, *et al*., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Identity thieves attacked plaintiff, Leon Jerome Thomas:  they stole his identity,

opened fake bank accounts, one at the Bank of America, and engaged in a series of sham

transactions under his name that ruined his financial standing.  The Anne Arundel County police

department documented this assault on Mr. Thomas's credit standing.  When Mr. Thomas

brought the fact that he had been victimized to the attention of Bank of America and defendant

Early Warning Services, LLC ("EWS"), both of which were ruining his credit by reporting false

information about him, defendant EWS refused to change the information in Mr. Thomas's

credit report ***despite admitting that the information was false.***

In response to that bullheaded refusal to remove false information, Mr. Thomas

instituted this lawsuit against defendant EWS and defendant Bank of America alleging violations

of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*  Defendant EWS has moved to dismiss

plaintiff's claim against it on the basis that:  (1) plaintiff's claim is barred by the FCRA's two-

year statute of limitations, 15 U.S.C. § 1681p; and, (2) the complaint alleges no facts supporting

any violation of the FCRA.  In addition, defendant EWS argues that even if plaintiff sufficiently alleged FCRA violations, plaintiff's claim for punitive damages fails because the complaint alleges no facts supporting a claim for a willful violation.

In response, plaintiff Thomas filed a motion for leave to file a first amended complaint and simultaneously filed this memorandum in opposition to the defendant EWS' motion to dismiss.  A copy of Plaintiff's Motion For Leave To File A First Amended Complaint with exhibits (those being the proposed First Amended Complaint and a redline version thereof) is attached hereto as Exhibit 1.

This Court should deny defendant EWS's motion.[1]

The FCRA promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies and special agencies (such as agencies that sell information about check writing histories, medical records, and rental history records).  In his Complaint and First Amended Complaint, plaintiff alleges that defendant EWS owed a duty to plaintiff Thomas to notify defendant Bank of America of plaintiff Thomas's notice of a dispute regarding his purported checking account with defendant Bank of America, to maintain and follow reasonable procedures to assure maximum possible accuracy of plaintiff's credit report, to investigate or reinvestigate disputed claims, and to correct, block, or delete inaccurate, incomplete, or unverifiable information.  Defendant EWS breached its statutory duties by, among other things, not correcting clearly erroneous information, knowing that such information would be included on plaintiff Thomas's credit report, despite being provided with the details of the Anne Arundel County Police Department's investigation that revealed that plaintiff Thomas did not participate

---

[1] Plaintiff has not yet served the other defendant, Bank of America.  When he attempted to serve the resident agent for Bank of America, Corporation Resolution Trust, that agent stated that because it represented several entities with "Bank of America" in their names, it would not accept service without a more specific identification of the entity at issue.  Mr. Thomas's First Amended Complaint names Bank of America N.A. as a defendant.

in or benefit from the fraudulent check cashing scheme that defendants were attributing to Mr.

Thomas.  Defendant EWS' breach proximately caused Plaintiff Thomas damages including the

inability to open a bank account, inability to secure a loan to finance a vehicle, loss of

employment, and inability to obtain employment.

## I.  FACTUAL ALLEGATIONS IN COMPLAINT AND FIRST AMENDED COMPLAINT

Mr. Thomas has alleged the following facts in support of his claims.

At no time relevant to the allegations of the Complaint did plaintiff Thomas open,

authorize, utilize, accept, or maintain any account of any type with defendant Bank of America.

Complaint ¶ 7.  At certain times relevant to the allegations of the Complaint, plaintiff Thomas

did maintain a checking account with Wachovia Bank.  *Id.* ¶ 8.  Wachovia closed that account

based upon inaccurate information furnished by defendant Bank of America and EWS, as alleged

with specificity in the Complaint and First Amended Complaint.  *Ibid.*

In or about 2007, certain persons illegally obtained certain identifying information

about plaintiff Thomas and used that information to open a fraudulent checking account in the

name of plaintiff Thomas at defendant Bank of America.  *Id.* ¶ 9.  Those persons used the

fraudulent checking account in the name of plaintiff Thomas to operate and facilitate a fraudulent

check cashing scheme.  *Id.* ¶ 10.  At no time did plaintiff Thomas authorize or consent to the

opening of this fraudulent account with defendant Bank of America.  *Id.* ¶ 11.  Plaintiff Thomas

had no role in the opening of the fraudulent bank account at Bank of America and played no role,

did not benefit from, and was not aware of the fraudulent check cashing scheme that utilized that

fraudulent bank account.  *Id.* ¶ 12.

On or about December 1, 2007, the Anne Arundel County Police Department

arrested certain persons and charged them with opening and operating the fraudulent checking

account established in the name of plaintiff Thomas with defendant Bank of America. *Id.* ¶ 13.

On or about December 1, 2007, the Anne Arundel County Police Department recovered

hundreds of personal checks, thousands of dollars in United States currency, and a rental vehicle

all related to what the department labeled as a "check cashing scheme" that involved the

fraudulent checking account established in the name of plaintiff Thomas with Bank of America.

*Id.* ¶ 14.  On or about December 1, 2007, the persons subsequently arrested by the Anne Arundel

County Police Department drew, uttered, and negotiated checks on the account fraudulently

opened in the name of plaintiff Thomas at defendant Bank of America, as follows:  check #102

in the amount of $4,300 cashed at the Bank of America branch located at 1090 Vermont Avenue,

N.W. Washington, D.C. 20005; check #103 in the amount of $4,700 cashed at the Bank of

America branch located at 3 DuPont Circle N.W. Washington, D.C. 20003; check #104 in the

amount of $4,500 cashed at the Bank of America branch located at 915 Rhode Island Avenue,

N.W. Washington, D.C. 20018; and check #105 in the amount of $4,600 cashed at the Bank of

America branch located at 344 Montrose Avenue, Laurel, Maryland 20707.  *Id.* ¶ 15.  Check

#106 in the amount of $4,500 was presented to the teller at the Bank of America branch located

at 7045 Arundel Mills Boulevard, Hanover, Maryland 21076, but the teller did not cash the

check because of an internal alert not to cash any additional checks presented for payment

against and or drawn on the fraudulent account in the name of plaintiff Thomas.  *Ibid.*  The

investigation of the Anne Arundel County Police Department revealed that a person other than

plaintiff Thomas had signed the name of plaintiff Thomas to the checks to be drawn, uttered, and

negotiated or offered for negotiation, as alleged above.  *Ibid.*  The investigation of the Anne

Arundel County Police Department revealed that a person other than plaintiff Thomas had stolen

identifying information regarding plaintiff Thomas and used that information fraudulently to

open the Bank of America account in the name of plaintiff Thomas.  *Id.* ¶ 17.  The investigation

of the Anne Arundel County Police Department revealed that the social security number and the

address used to open the fraudulent Bank of America account in the name of plaintiff Thomas

were not the social security number and not the address of plaintiff Thomas.  *Id.* ¶ 18.

At no time did the Anne Arundel County Police Department charge plaintiff

Thomas with any participation in the fraudulent check cashing scheme alleged above.  *Id.* ¶ 19.

To the contrary, the Anne Arundel County Police Department at all times viewed plaintiff

Thomas as the victim of this scheme.  *Id.* ¶ 20.

Notwithstanding the fact that plaintiff Thomas had no involvement whatsoever

with the fraudulent check cashing scheme that utilized the fraudulent account opened in his

name, defendant Bank of America reported to defendant EWS certain inaccurate, incorrect, and

adverse information concerning the checking account unlawfully opened in the name of plaintiff

Thomas to the effect that plaintiff Thomas had been involved in the fraudulent activities relating

to that account.  This false information included an allegation that Mr. Thomas was responsible

for an overdraft balance on that account, when in fact that overdraft balance had in fact been

caused by the fraudulent check cashing scheme at issue.  *Id.* ¶ 21.

Defendant EWS subsequently reported this inaccurate, incorrect, and adverse

information about plaintiff Thomas's involvement in the fraudulent check cashing scheme to

various credit reporting agencies and other third parties.  *Id.* ¶ 22.

On or about February 7, 2008, NCO Financial Systems, Inc. sent a letter to

plaintiff Thomas stating, in part:  "The named creditor has placed this account with our office for

collection.  It is important that you forward payment in full."  *Id.* ¶ 23.  The letter identifies the

creditor as defendant Bank of America and the debt as a personal overdraft in the amount of

$103.68.  *Id.* ¶ 23.  On or about February 15, 2008, Wachovia sent a letter to plaintiff Thomas,

stating in part:

> **"We have closed the above account, effective <u>immediately</u>.  Please do NOT attempt to write any checks on this account – they will be returned unpaid, and you may be responsible for returned check charges imposed by the payee.**
>
> *"We are taking this action because of the reported way in which you have managed similar accounts in the past.*
>
> "The consumer reporting agency named below provided us with information that influenced our decision to close your account.  However, the agency did not make that decision and cannot give you specific reasons for it.
>
> "You also have the right to dispute the accuracy or completeness of any information provided by them.  Any questions regarding such information should be directed to:
>
> "Early Warning Services, LLC
> 6045 W. Chandler Blvd. #13 PMB 168
> Chandler, AZ 85226
> (800) 325-7775"

(Boldface type in original; emphasis added.)  *Id.* ¶ 24.

In response to the Wachovia letter, plaintiff Thomas contacted EWS to request

disclosure of all information referred to in the Wachovia letter.  *Id.* ¶ 25.  On or about February

19, 2008, Early Warning Services responded to plaintiff's request by letter stating:

> "Our office has received your request for file disclosure.  We regret the inconvenience that you have encountered in attempting to establish an account relationship with Wachovia.  We will try to clear up this matter as soon as possible.  To do so, we need your cooperation.
>
> "Please help us by providing information about yourself on the attached form.
>
> **"Please sign the form and return on to us along with a photocopy of the letter you received from Wachovia.  You must complete the form in its entirety or we may need to resend it to you."**

(Boldface type in original.)  *Id.* ¶ 26.

On or about February 21, 2008, plaintiff Thomas provided notice of his dispute to EWS by faxing the following: facsimile cover sheet; completed and signed Consumer Questionnaire & Release Form dated February 19, 2008; and a handwritten letter to EWS dated February 20, 2008 specifically disputing the adverse information about him reported by defendant Bank of America to defendant EWS.  *Id.* ¶ 27.  Plaintiff Thomas's February 21, 2008, facsimile cover sheet to EWS specifically stated:

> "Please forward info to Bank of America.  I'm in the process now of getting the police report.  I placed fraud alerts on my credit files and I will be obtaining a identity theft report today."

*Id.* ¶ 28.

On or about March 5, 2008, EWS sent a letter to plaintiff Thomas acknowledging receipt of his dispute and stating:

> "We received your request for dispute regarding the information contained in your consumer report.  We have completed a reinvestigation of your file.  ***The results of our investigation confirm that some of the information you provided to Wachovia was reported to us by another financial institution(s) as inappropriately used, and that the information reported to us resulted in a financial loss to, or other potential loss with respect to, the reporting financial institution(s).***
>
> If you feel this reinvestigation does not resolve the dispute, you may add a brief statement to your file disputing the accuracy or completeness of the information.  You may request a description of the procedure used to determine the result of the information in your file, including the business name, address, and phone number of any furnisher of information contacted in connection with such information."

(Emphasis added.)  *Id.* ¶ 29.

On or about March 5, 2008, defendant Bank of America, sent a letter to plaintiff Thomas, stating:

> "Your dispute letter to Early Warning Services, LLC concerning the closure of the above referenced account has been referred to me for reply.

> "We have performed a detailed review of the accounts and found that the reason for closure is accurate.  Therefore, the decision to end the account relationships and the reporting to ChexSystems, Inc. and Early Warning Services, LLC, is accurate and will remain in effect."

*Id.* ¶ 30.

These acts and omissions of defendant Bank of America and defendant EWS, jointly and severally, have caused and continue to cause plaintiff Thomas to suffer damages because his credit reports and files contain inaccurate, incorrect, and adverse information identifying him as a participant in the fraudulent check cashing scheme, despite the fact that he was the victim, not the perpetrator or beneficiary, of that scheme.  *Id.* ¶ 31.  For example, on or about March 7, 2008, SECU Credit Union responded to plaintiff Thomas's attempt to open an account at by sending plaintiff Thomas a "NOTICE OF ACTION BASED ON INFORMATION CONTAINED IN A CONSUMER REPORT," stating, in part:

> We regret we cannot open your account today due to information received from ChexSystems, Inc., a consumer reporting agency.  ChexSystem did not make the decision to disapprove your account application and is unable to provide you with specific reasons why the decision was made.

*Id.* ¶ 32.

On or about March 7, 2008, plaintiff Thomas attempted to obtain a loan to finance the purchase of a vehicle at Jerry's Toyota in Bel Air, Maryland but was denied.  *Id.* ¶ 33. Plaintiff Thomas suffered adverse effects to his employment including loss of employment and an inability to obtain new employment based upon the adverse effects of the acts and omissions of defendants, as alleged herein.  *Id.* ¶ 34.

Defendant EWS has continued to issue reports with inaccurate, incorrect, and adverse information to this day:  it continues to refuse to correct the inaccurate, incorrect, and adverse information; and since June 2008, has issued at least one credit report after it admitted its

reports contained false information about Mr. Thomas.  Ex. 1, First Amended Complaint ("FAC") (Ex. 1 to the Motion For Leave To File Amended Complaint) ¶ 35.  In June 2010, plaintiff Thomas attempted to obtain a loan to finance the purchase of a vehicle from Sena Auto in Bel Air but was denied based upon the adverse effects from the acts and omissions of defendants, as alleged herein.  *Id.* ¶ 36.  In June 2010, plaintiff Thomas attempted to obtain a loan to finance the purchase of a vehicle from Sir Michael's in Dundalk but was denied based upon the adverse effects of the acts and omissions of defendants, jointly and severally, as alleged in the First Amended Complaint.  *Id.* ¶ 37.

On various occasions since April 2008, including during the years 2009 and 2010, plaintiff Thomas's request to open a bank account with a financial institution has been denied based upon the adverse effects of the acts and omissions of defendants, jointly and severally, as alleged in the Complaint and in the First Amended Complaint.  *Id.* ¶ 38.

To this day, defendant EWS continues to spew out false information about Mr. Thomas, persists in its refusal to correct that information, and harms Mr. Thomas over and over and over, each time he seeks to engage in a financial transaction.  *Id.* ¶ 39.

## II.  STANDARD FOR RULING UPON A MOTION TO DISMISS

To state a claim for relief, a pleading must contain a "short and plain statement of a claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The pleading standard under Rule 8 does not require "detailed factual allegations, but it demands more than an unadorned, 'the defendant unlawfully harmed me accusation.'"  *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ibid.* (citing *Twombly*, *supra,* 550 U.S. at 570).  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ibid.* The plausibility standard is not a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S.Ct. at 1950.

Measured by these standards, Mr. Thomas's Complaint, and especially his First Amended Complaint, must be sustained.

## III. PLAINTIFF'S CLAIM AGAINST EWS IS NOT TIME-BARRED UNDER THE FCRA

Defendant EWS owed plaintiff Thomas a duty to: (1) maintain and follow reasonable procedures to assure maximum possible accuracy of plaintiff's credit report; (2) investigate or reinvestigate disputed claims, and (3) correct, block, or delete inaccurate, incomplete, or unverifiable information. Defendant EWS first argues that plaintiff's claim is barred by 15 U.S.C. §§ 1681p(1), which provides that an action under the FCRA must be brought within "two years after the date of discovery by the plaintiff of the violation that is the basis for such liability" or within five years of the violation, whichever is earlier. *See* EWS Motion To Dismiss, at 4. Defendant next argues, "Plaintiff's allegations reveal that his claims are time-barred because that the operative provisions under the FCRA – Sections 1681c, 1681e, and 1681i – provide that liability arises when the consumer reporting agency violates the statutory duty." *Ibid.* Plaintiff is left to guess what defendant EWS means by the operative provisions and how they alter the applicable limitations period set forth in 15 U.S.C. §§ 1681p(1).

Defendant EWS generally states that plaintiff's Complaint filed on April 2, 2010 is on its face premised on allegations that occurred on or before March 5, 2008 because: (1) plaintiff alleges he notified EWS of his dispute on February 21, 2008; (2) the results of the investigation were completed by EWS on March 5, 2008; and (3) plaintiff's Complaint was filed on April 2, 2010.  *Ibid*.  Defendant EWS is incorrect because plaintiff could not have discovered the violations that form the basis of liability against defendant EWS until a later time.  For example, the March 5, 2008, results of EWS' reinvestigation are ambiguous and do not inform plaintiff what, if any, steps defendant EWS intended to take based on the information communicated in its letter.

Defendant EWS next argues that plaintiff's claim under 15 U.S.C. § 1681c-2[2] is barred because the statute requires the consumer reporting agency to block information in a consumer's file within four business days after receipt from the consumer of information concerning identity theft.  *Ibid*.  Defendant EWS argues that plaintiff's claim is time barred because plaintiff alleges that he provided the notice of dispute and information regarding identity theft to EWS on February 21, 2008, and thus the statutory duty was triggered no later than February 27, 2008.  *Ibid*.  Defendant EWS offers no argument of when or how plaintiff discovered this violation prior to filing his Complaint on April 2, 2010.  Such a determination is for the factfinder.

Defendant EWS then argues that "Plaintiff's claim that EWS failed to follow reasonable procedures to ensure maximum accuracy in preparing a consumer report, which is governed by 15 U.S.C. § 1681e, is time barred since the operative date for determining when the limitations period runs is the 'date on which the erroneous information is transmitted by a credit

---

[2] Defendant EWS does not argue that plaintiff fails to state a claim under 15 U.S.C. § 1681c-1, which requires defendant EWS to place a "fraud alert" on plaintiff's credit report so that claim is not subject to dismissal.

agency.'" *See* EWS Motion To Dismiss, at 5 (citing *Briley v. Burns Int'l*, 78 Fed.Appx. 481, 485 (6th Cir. 2003). Defendant EWS next states that the only allegation in the Complaint regarding a report by EWS is the statement that EWS reported erroneous information to Wachovia sometime before February 15, 2008, more than two years before the Complaint was filed. *Ibid.*

    Defendant EWS is incorrect for several reasons. While it is true that under the FCRA provision regarding the accuracy of credit reports, 15 U.S.C. § 1681e, liability arises when the consumer reporting agency issues an inaccurate consumer report (*Acton v. Bank One Corp.*, 293 F.Supp.2d 1092, 1097 (D. Ariz. 2003)), courts have recognized that "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." *Ibid.* (citing *Whitesides v. Equifax Credit Info. Services, Inc.*, 125 F.Supp.2d 807, 812 (W.D. La. 2000); *Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 450 (C.A. 5 1988)). Plaintiff's Complaint clearly contains sufficient allegations that defendant EWS issued inaccurate reports after April 2, 2010. Plaintiff Thomas alleges in his Complaint that the acts and omissions of defendant Bank of America and defendant EWS, jointly and severally, have caused and continue to cause plaintiff Thomas to suffer damages because his credit reports and files contain inaccurate, incorrect, and adverse information identifying him as a participant in the fraudulent check cashing scheme alleged above, despite the fact that he was the victim, not the perpetrator or beneficiary, of that scheme. Complaint ¶ 31. Plaintiff Thomas also alleges adverse effects to his employment including loss of employment and an inability to obtain new employment based upon the adverse effects of the acts and omissions of defendants, as alleged in the Complaint. *Id.* ¶ 34. Plaintiff Thomas alleges that defendant EWS' breach of duty resulted in plaintiff's inability to open an account at any banking institution, plaintiff's

inability to obtain financing from any institution for an automobile, loss of employment, plaintiff's inability to secure gainful employment, and harm to his reputation.  *Id.* ¶ 57.

If there is any doubt about the sufficiency of the allegations contained in Plaintiff's Complaint, certainly such doubt is removed by the First Amended Complaint. Plaintiff Thomas specifically alleges in his First Amended Complaint that Defendant EWS has continued to issue reports with inaccurate, incorrect, and adverse information; has refused to correct the inaccurate, incorrect, and adverse information; and since June 2008, has issued at least one credit report after acknowledging the falsity of the information contained therein.  Ex. 1, ¶ 35.  Plaintiff Thomas further alleges specifically that In June 2010, he twice attempted to obtain a loan to finance the purchase of a vehicle, once from Sena Auto in Bel Air, and on another occasion from Sir Michael's in Dundalk, but was denied based upon the adverse effects of the acts and omissions of defendants.  *Id.* ¶¶ 36-37.  Lastly, plaintiff Thomas alleges that on various occasions since April 2008, including during the years 2009 and 2010, plaintiff Thomas's request to open a bank account with a financial institution has been denied based upon the adverse effects of the acts and omissions of defendants, jointly and severally.  *Id.* ¶ 38.

Defendant EWS' final argument is that plaintiff Thomas's 15 U.S.C. § 1681i claim is time barred because plaintiff filed his Complaint more than two years after notifying defendant EWS of his dispute and after defendant EWS conducted its reinvestigation.  *Ibid*.  For support, defendant EWS claims that its March 5, 2008 letter placed plaintiff on notice of any alleged errors by EWS in the reinvestigation process, and sets the "date of discovery" for purposes of determining the statute of limitation.  *Ibid*. (citing *Briley*, 78 Fed.Appx. at 485("Liability arises under § 1681i 'when the consumer reporting agency' allegedly violate[s] its duty under the FCRA to reinvestigate."))  Such is not the case as defendant EWS ignores the

elements of § 1681i, misplaces its reliance on *Briley*, overstates the significance of its March 5, 2010, letter to plaintiff Thomas, and does not account for case law regarding the scope of reinvestigations.

First, to establish a claim under § 1681i(a), the plaintiff must establish: (1) he notified EWS directly of a disputed item in his credit file; (2) EWS failed to reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file as required by § 1681i(a)(5) within the 30-day period; (3) EWS's failure to comply with the statute was negligent; and (4) EWS failure caused the plaintiff's injury. *E.g. Acton v. Bank One Corp.,* 293 F.Supp.2d 1092, 1098-99 (2003)(citing *Waggoner v. Trans Union, LLC,* No. 302CV1494G, 2003 WL 22220668, at *9 (N.D.Tex. July 17, 2003) (citation omitted)). Plaintiff has specifically pleaded that:

> (1) he notified EWS of the dispute (which EWS acknowledges; *see* EWS Motion To Dismiss, at 5;);
>
> (2) EWS breached its duty under 15 U.S.C. § 1681i by failing to either record the current status of the disputed information or delete the item from the file as required by § 1681i(a)(5) within the 30-day period;
>
> (3) EWS's failure to comply was negligent; and
>
> (4) EWS's failure caused him injuries.

Complaint ¶¶ 23-39, 49-57; Ex. 1, ¶¶ 34-39, 53-62.

Second, defendant EWS' reliance on the *Briley* case in arguing that EWS completed a reinvestigation within thirty days of receiving notice of the dispute from plaintiff Thomas ignores the requirement that the reinvestigation result in EWS either recording the current status of the disputed information or deleting the item from plaintiff's file as required by 15 U.S.C. § 1681i(a)(5).

Third, defendant's EWS March 5, 2008 letter, which defendant EWS claims put plaintiff on notice of EWS' failure to reinvestigate states:

"We received your request for dispute regarding the information contained in your consumer report.  We have completed a reinvestigation of your file.  ***The results of our investigation confirm that some of the information you provided to Wachovia was reported to us by another financial institution(s) as inappropriately used, and that the information reported to us resulted in a financial loss to, or other potential loss with respect to, the reporting financial institution(s).***

"If you feel this reinvestigation does not resolve the dispute, you may add a brief statement to your file disputing the accuracy or completeness of the information.  You may request a description of the procedure used to determine the result of the information in your file, including the business name, address, and phone number of any furnisher of information contacted in connection with such information."

(Emphasis added.)  Complaint ¶ 29.  This letter falls dramatically short of providing notice to plaintiff of EWS' failure to investigate so as to trigger the two year period in which plaintiff could file a claim.  What could plaintiff Thomas have discovered from defendant EWS' March 5, 2008 letter?  What did EWS intend to do?  What did EWS not intend to do?  For these reasons, plaintiff Thomas could not have discovered defendant EWS's failure to correct its records or make a note of the existence of a dispute on its files as of the date of the letter.  In any event, the issue should be resolved by the factfinder, not by way of a motion to dismiss.

Finally, courts have held that reinvestigations are inadequate if they merely shift the burden back to the consumer and the credit grantor or do not show that the actions the agency has taken are adequate under the circumstances. *E.g., Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (C.A. 3 1997) (when consumer reported possibility that someone had obtained credit cards in her name and was using them fraudulently, statute required more of consumer reporting agency than simply confirming with card issuers that cards had been issued in consumer's name); *Henson v. CSC Credit Services,* 29 F.3d 280, 286 (C.A. 7 1994) (holding that after consumer

reporting agency receives notice that report of judgment against consumer may be inaccurate, it has duty to look beyond reporting of judgment, although it has no such duty prior to receipt of notice); *Stevenson v. TRW Inc.,* 987 F.2d 288, 293 (C.A. 5 1993) (upholding jury finding that consumer reporting agency violated § 1681i when it relied solely on Consumer Dispute Verification forms in conducting investigation despite large number of disputed accounts and allegations of fraud).  The letter to plaintiff from defendant EWS dated March 5, 2008, plainly shows that defendant EWS simply relied, without more, on information from the bank and put the burden on plaintiff to take additional action, both of which sufficiently pleads a violation under 15 U.S.C. § 1681(i).

For these reasons, plaintiff Thomas has timely filed his claim against defendant EWS in compliance with the FCRA's two year limitation period and this Court should deny defendant EWS' motion to dismiss plaintiff's claims under 15 U.S.C. § 1681 based upon the statute of limitations.

## IV.  PLAINTIFF'S CLAIM AGAINST EWS ALLEGES SUFFICIENT FACTS TO CONSTITUTE A VIOLATION OF THE FCRA AS A MATTER OF LAW

EWS argues that plaintiff states in a conclusory fashion that defendant EWS violated the FCRA by allegedly: (1) failing to adequately investigate or reinvestigate plaintiff's claim that inaccurate information was furnished to it; (2) failing to maintain and follow reasonable procedures to ensure maximum possible accuracy of plaintiff's credit report; (3) failing to correct inaccurate, incomplete and adverse information; and (4) failing to block disputed information.  *See* EWS' Motion To Dismiss, at 5-6.  To the contrary, plaintiff's complaint contains well-pleaded factual allegations, allowing this court to assume their veracity, which, in turn satisfies the plausibility requirement giving rise to an entitlement to relief.

16

Plaintiff Thomas filed a detailed fifty-eight paragraph Complaint incorporating seven attached exhibits.  Of the fifty-eight paragraphs, paragraphs seven through thirty-four stated specific allegations of fact common to all counts.  Complaint ¶¶ 7 – 34.  Plaintiff's First Amended Complaint contains even more specific allegations regarding the acts and omissions of defendant EWS in violation of the FCRA.

At the heart of plaintiff's allegations is that he notified defendant EWS of the inaccurate, incorrect, and adverse information provided by defendant Bank of America, informed defendant EWS that he had been the victim of identity theft, and specifically provided information from the Anne Arundel County Police Department's investigation establishing that plaintiff Thomas did not participate in or benefit from the fraudulent scheme at issue, and yet defendant EWS took no corrective action.  Complaint ¶ 51.  In its March 5, 2008 letter to plaintiff, defendant EWS admitted, "The results of our investigation confirm that some of the information you provided to Wachovia was reported to us by another financial institution(s) as inappropriately used, and that the information reported to us resulted in a financial loss to, or other potential loss with respect to, the reporting financial institution(s)."  Complaint ¶ 29. Plaintiff Thomas alleges that on March 7, 2008, SECU Credit Union denied his request to open an account based on information contained in his credit report and that Jerry's Toyota denied his request for a loan to finance the purchase of a vehicle.  Complaint ¶¶ 32-34.  Plaintiff Thomas suffered adverse effects to his employment including loss of employment and an inability to obtain new employment based upon the adverse effects of the acts and omissions of defendants, as alleged herein.  Complaint ¶ 34.  These factual allegations go well beyond merely stating legal conclusions and are sufficient to defeat defendant EWS' motion to dismiss.  Additional reasons

to defeat defendant EWS' Motion To Dismiss Plaintiff Thomas's claims under 15 U.S.C. §

1681c-2, § 1681e, and§ 1681i are more thoroughly discussed below.

### A.  Plaintiff Has Sufficiently Pleaded A Claim Pursuant To 15 U.S.C. §1681i.

Defendant EWS argues that plaintiff's Complaint undermines any claim for

failure to investigate because it also alleges a prompt investigation.  *See* EWS Motion To

Dismiss, at 6 (citing *Boothe v. TRW Credit Data*, 768 F.Supp. 434, 438 (S.D.N.Y. 1991)

(granting summary judgment on claim under § 1681 where undisputed facts showed that

defendant promptly investigated claims and determined the accuracy of information contested by

plaintiff).  Defendant's only other argument for dismissal is "because the Plaintiff's liability to

Bank of America is a complex question – one which would not have been answered by any

'reasonable investigation,' Plaintiff states no claim under 15 U.S.C. §1681i.  *Ibid.* (citing

*Cornock v. Trans Union LLC,* 638 F.Supp.2d 158, 164 (D.N.H. 2009)(granting summary

judgment on claim under § 1681involving debts from unauthorized charges)).

Defendant EWS misses the mark.  First, defendant EWS' reliance on *Boothe* and

*Cornock* is misplaced because those cases, unlike this one, involved summary judgment and thus

undisputed facts.  Second, the issue whether defendant EWS conducted a "reasonable"

investigation and reinvestigation is for the jury.  *Acton,* 293 F.Supp.2d at 1099.  Third, in

considering the issue of reasonableness, plaintiff alleges that he directly informed defendant

EWS that he had been the victim of identity theft, and specifically provided information from the

Anne Arundel County Police Department's investigation establishing that plaintiff Thomas did

not participate in or benefit from the fraudulent scheme at issue.  *See* 15 U.S.C. 1681i(a)(4)( In

conducting any reinvestigation the consumer reporting agency shall review and consider all

relevant information submitted by the consumer during the thirty day period with respect to such

disputed information);  Complaint ¶ 51.  Fourth, defendant EWS offers no argument for dismissal of plaintiff's 1681i claim that defendant EWS failed to correct the inaccurate information contained in his credit report.  Fifth, defendant EWS offers no argument for dismissing plaintiff's claim that EWS breached its duty to reinvestigate, yet 15 U.S.C. 1681i pertains to reinvestigations.  Finally, courts have held that reinvestigations are inadequate if they merely shift the burden back to the consumer and the credit grantor or do not show that the actions the agency has taken are adequate under the circumstances. *E.g., Cushman v. Trans Union Corp.,supra*, 115 F.3d at 225 (when consumer reported possibility that someone obtained and fraudulently used credit cards in her name, statute required more of consumer reporting agency); *Henson v. CSC Credit Services, supra*, 29 F.3d at 286  (after consumer reporting agency receives notice that report of judgment against consumer may be inaccurate, it has duty to look beyond reporting of judgment); *Stevenson v. TRW Inc, supra,* 987 F.2d at 293 (upholding jury finding that consumer reporting agency violated § 1681i when it relied solely on Consumer Dispute Verification forms in conducting investigation despite large number of disputed accounts and allegations of fraud).

Here, plaintiff Thomas sufficiently alleges facts to sustain his claim under 15 U.S.C. § 1681i that defendant EWS failed to investigate or reinvestigate an item in a plaintiff's credit file after plaintiff directly notified defendant EWS of the error.

**B.  Plaintiff Has Sufficiently Pleaded A Claim Pursuant To 15 U.S.C. §1681e.**

Defendant EWS argues that plaintiff fails to provide any specific factual allegations to support a claim under Section 1681e that EWS failed to follow reasonable procedures when reporting information regarding plaintiff.  *See* EWS Motion to Dismiss, at 6.  Defendant EWS suggests that "Plaintiff merely recites the legal conclusion without any

supporting factual allegations" and that "…the Complaint is devoid of any allegations that EWS could not reasonably rely upon the information provided [by Bank of America]." *Id.,* at 7.  In support of its argument, defendant EWS relies on the unreported case of *Allmond v. Bank of America*, 2008 WL 2445652 (M.D. Fla. June 16, 2008).  Defendant EWS' argument is incorrect, the issue of reasonableness is for the jury, plaintiff's Complaint contains specific allegations to defeat dismissal, and the *Allmond* case is factually distinguishable.

First, Section 1681e(b) states "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b). The issue of whether defendant EWS followed reasonable procedures is for the jury. *Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F.Supp.2d 1228, 1237 (M.D. Ala. 2002)("reasonable procedures defense creates a jury question;" reasonableness is a question of fact).  Plaintiff satisfies the pleading requirements under the statute by alleging that defendant EWS was negligent, that his credit report contains inaccurate information, and that defendant EWS' breach of duty proximately caused him to suffer damages.  For example, plaintiff Thomas alleges that on March 7, 2008, SECU Credit Union denied his request to open an account based on information contained in his credit report and that Jerry's Toyota denied his request for a loan to finance the purchase of a vehicle.  Complaint ¶¶ 32-34.  Plaintiff Thomas also alleges that he suffered adverse effects to his employment including loss of employment and an inability to obtain new employment based upon the adverse effects of the acts and omissions of defendants, as alleged herein. *Id.*¶ 34.  In its March 5, 2008 letter to plaintiff, defendant EWS admitted, "The results of our investigation confirm that some of the information you provided to Wachovia was reported to us by another financial institution(s) as inappropriately used, and that the information

reported to us resulted in a financial loss to, or other potential loss with respect to, the reporting

financial institution(s)."  *Id.*¶ 29.  In doing so, defendant EWS acknowledges the inaccurate

information in plaintiff's credit report resulting in a loss to plaintiff.

Plaintiff Thomas specifically alleges in his First Amended Complaint that

Defendant EWS has continued to issue reports with inaccurate, incorrect, and adverse

information; has refused to correct the inaccurate, incorrect, and adverse information; and since

June 2008, has issued at least one credit report after acknowledging the falsity of the information

contained therein.  Ex. 1, ¶ 35.  Plaintiff Thomas further alleges specifically in his First Amended

Complaint that in June 2010, he twice attempted to obtain a loan to finance the purchase of a

vehicle, once from Sena Auto in Bel Air, and on other occasion from Sir Michael's in Dundalk,

but was denied based upon the adverse effects of the acts and omissions of defendants.  *Id.* ¶¶

36-37.  Lastly, plaintiff Thomas alleges in his First Amended Complaint that on various

occasions since April 2008, including during the years 2009 and 2010, plaintiff Thomas's

request to open a bank account with a financial institution has been denied based upon the

adverse effects of the acts and omissions of defendants, jointly and severally.  *Id.* ¶ 38.

Fourth, the *Allmond* case is factually distinguishable.  There, the court, in

dismissing plaintiff's 15 U.S.C. § 1681 claim, stated:

> "Allmond's amended complaint contains no material plausibly
> suggesting that Early Warning failed to follow reasonable
> procedures when reporting the information regarding Allmond.
> Read liberally, the complaint simply asserts that Early Warning
> prepared an inaccurate credit report based on information provided
> by Bank of America. …There is simply no suggestion that it was
> unreasonable for Early Warning to rely on information supplied by
> Bank of America."

*Allmond,* 2008 WL 2445652 at *2.  Unlike the *Allmond* plaintiff, plaintiff Thomas's Complaint

does contain material that plausibly suggests that defendant EWS failed to follow reasonable

procedures when reporting information about plaintiff Thomas and that it was unreasonable for defendant EWS to rely on information supplied by defendant Bank of America after being informed that the Anne Arundel County police had cleared plaintiff of involvement in the scheme at issue.  Plaintiff Thomas's Complaint specifically alleges that he directly informed defendant EWS that he had been the victim of identity theft, and specifically provided information from the Anne Arundel County Police Department's investigation establishing that plaintiff Thomas did not participate in or benefit from the fraudulent scheme at issue.  Complaint ¶ 51.

Finally, with respect to plaintiff's 15 U.S.C. § 1681e claim, defendant EWS suggests that, even assuming it did not correct inaccurate information, plaintiff's claim is defeated because he alleges that defendant Bank of America verified the accuracy of the information.  *See* EWS Motion To Dismiss, at 7.  For support, defendant EWS cites *Anderson v. Trans Union LLC*, 367 F.Supp.2d 1225 (W.D. Wis. 2005), which involved a motion for summary judgment rather than a motion to dismiss and it did not involve identity theft.  Unlike the plaintiffs in *Anderson*, plaintiff Thomas has alleged that defendant EWS had cause to believe that defendant Bank of America was an unreliable source that could not be relied upon for an accurate report of plaintiff Thomas because of the Anne Arundel County Police Department's investigation report confirming the identify theft and exculpating plaintiff Thomas from any involvement.  *Anderson*, 367 F.Supp.2d at 1233.

## C.  Plaintiff Has Sufficiently Pleaded A Claim Pursuant To 15 U.S.C. §1681c-2.

15 U.S.C. § 1681c-2 requires defendant to block the reporting of information in the plaintiff's file after receiving and verifying information concerning plaintiff's identify theft. Defendant EWS argues that its statutory duty under 15 U.S.C. § 1681c-2 was not triggered

because plaintiff Thomas failed to provide proof of his identity and a copy of the identity theft report.  *See* EWS Motion To Dismiss, at 7.[3]  For support, defendant EWS states, "The Complaint attaches as Exhibit 5 all the information that Plaintiff provided to EWS, which does not contain any of the documents required to trigger any statutory duty.   In fact, his correspondence specifically states that he will 'be obtaining an identity theft report' but there are no allegations that such a report was received by EWS, let alone provided to EWS."  *Ibid.* (citing *Collins*, 494 F.Supp.2d at 132)(granting summary judgment in favor of defendants on the basis that plaintiffs failed to meet the prerequisite of Section 1681c-2(a) by failing to send their proof of identity or copy of their identity theft reports to the credit reporting agencies).  Defendant EWS' argument raises a factual dispute, which is not properly resolved by a motion to dismiss, again relies on a factually distinguishable case involving summary judgment, and again ignores the specific allegations contained in the Complaint.  For example, plaintiff alleges in paragraph 51 of the Complaint that "Plaintiff notified EWS of the inaccurate, incorrect, and adverse information provided by Bank of America, informed defendant that he was the victim of identity theft, and **specifically provided information from the Anne Arundel County Police Department**."  Ex. 1, ¶ 51 (Boldface type added.)  Plaintiff further alleges in paragraphs 55 through 57 of the Complaint, contained within Claim Two against defendant EWS, that defendant EWS breached its duty, acted with a reckless and willful disregard of its statutory duty, and acted with malice towards plaintiff "knowing that such information would be included on plaintiff Thomas' credit report **despite being provided with the details of the Anne Arundel County Police Department's investigation**."  *Id.*¶¶ 55-57 (Boldface type added.)  Defendant EWS informed plaintiff Thomas by letter dated March 5, 2008, that it verified certain information provided by

---

[3] Defendant does not argue that plaintiff Thomas fails to state a claim under 15 U.S.C. § 1681c-1, which requires defendant EWS to place a "fraud alert" on plaintiff's credit report so that claim is not subject to dismissal.

plaintiff Thomas.  Ex. 1, ¶ 53.  The court may assume the veracity of these well pleaded facts,

which are sufficient to defeat dismissal of plaintiff's 1681c-2 claim.

### V.  PLAINTIFF SUFFICIENTLY ALLEGES THAT EWS'S CONDUCT ARISES TO WILLFUL OR RECKLESS ENTITLING HIM TO PUNITIVE DAMAGES.

Plaintiff alleges that defendant EWS acted with a reckless and willful disregard of

its statutory duty by not correcting clearly erroneous information, knowing that such information

would be included on plaintiff Thomas's credit report, despite being provided with the details of

the Anne Arundel County Police Department's investigation that revealed that plaintiff Thomas

did not participate in or benefit from the fraudulent check cashing scheme alleged herein.

Complaint ¶ 56.  Additionally, defendant EWS in its March 5, 2008 letter to plaintiff admitted,

"The results of our investigation confirm that some of the information you provided to Wachovia

was reported to us by another financial institution(s) as inappropriately used, and that the

information reported to us resulted in a financial loss to, or other potential loss with respect to,

the reporting financial institution(s)."  *Id.* ¶ 29.

Plaintiff's Complaint, therefore, sufficiently alleges that defendant EWS acted

willful in conscious disregard of plaintiff's consumer's rights and that defendant EWS'

noncompliance with the FCRA was deliberate and purposeful.  *Robinson v. Equifax Info. Svs.,

LLC*, 560 F.3d 235, 241, fn. 3 (C.A. 4 2009).   Moreover, plaintiff's Complaint sufficiently

alleges that defendant EWS knowingly and intentionally refused to correct the erroneous

information it reported despite confirming that such information was inaccurate.  As such,

plaintiff sufficiently alleges facts that establish the required *mens rea* under the FCRA's willful

noncompliance provision.  *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (C.A. 4

2001).

This Court should deny defendant Early Warning Services, LLC's Motion To Dismiss Plaintiff's Complaint.

Respectfully submitted,

LAW OFFICES OF
  WILLIAM ALDEN MCDANIEL, JR.

_/s/ William Alden McDaniel, Jr._____
William Alden McDaniel, Jr.
Bar No. 00571

_/s/ Adam Thomas Sampson_____
Adam Thomas Sampson
Bar No. 26278

118 West Mulberry Street
Baltimore, Maryland 21201
Tel.:  410.685.3810
Fax:  410.685.0203
E-Mail:  wam@wamcd.com
E-Mail:  ats@wamcd.com

*Attorneys for Plaintiff Leon Jerome Thomas*

Date:  July 27, 2010

Opposition Motion To Dismiss.doc

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 27, 2010, I filed a copy of the foregoing

**MEMORANDUM IN OPPOSITION TO DEFENDANT EARLY WARNING SERVICES,**

**LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** via ECF upon the following:

> David S. Panzer, Esquire
> GREENBERG TRAURIG, LLP
> 2010 L. Street, 1000
> Washington, D.C. 20037
>
> *Attorneys for Defendant*
> *Early Warning Services, LLC*

> */s/ Adam Thomas Sampson*
> Adam Thomas Sampson